CULPEPPER, Judge.
This is a suit for declaratory judgment fixing the amount of salary due a school teacher while on sabbatical leave. From an adverse judgment the plaintiff appeals.
The facts were stipulated and are as follows: During the school year 1961-1962 Mr. Coody was employed by the Natchi-toches Parish School Board, as principal of the Campti High School at a salary of $7,972.44 per year. In May of 1962 he was granted a 12-month sabbatical leave from his duties during the school year 1962-1963, for the purpose of working toward a degree as doctor of education. Prior to the beginning of the school year in September of 1962, the defendant school board employed Mr. Lynn Snell to act as principal of the Campti High School as a substitute for plaintiff, at a salary identical to that which plaintiff would have received had he continued to teach.
LSA-R.S. 17:1184, providing for the compensation of teachers while on sabbatical leave, gives them an option as to method of computation of their rate of pay, and reads as follows:
“Each teacher granted sabbatical leave shall receive and be paid compensation at the rate of 50% of the minimum salary allowed a beginning teacher holding a bachelor’s degree; provided, however, that any teacher on sabbatical leave may elect to be paid the difference between the salary he would have received during such leave if in active service in the position from which such leave is taken and the salary or compensation which a day by day substitute would receive during such leave, if assigned to that position; provided, further, that when a school board has fixed a rate of pay to be paid a day by day substitute teacher for each school day of teaching, the amount to be deducted from the pay of any teacher on sabbatical leave who elects to be paid under the option herein provided shall not exceed the amount so fixed, whether or not a different amount actually is paid to the substitute for the teacher on sabbatical leave. Any school board may pay such additional compensation to teachers on sabbatical leave as it may establish and fix. As amended Acts 1952, No. 186, § 1; Acts 1960, No. 585, § 1.”
Mr. Coody chose the “second option” in LSA-R.S. 17:1184, i. e., he chose to be paid in relation to the difference between his salary and that of the substitute.
In this instance the Natchitoches Parish School Board did have a fixed rate of pay for substitutes, as set forth in their resolution of date, March 3, 1942, reading in pertinent part as follows:
“Section 2. Be It Further Resolved, etc., That, any substitute teacher em *305 ployed who holds a teacher’s certificate that is valid, and who teaches as many as ten days or fractional part thereof, shall he paid at the rate of $4.00 per day; and for such length of time thereafter he may continue to teach as a substitute for the same teacher without being replaced by the resident teacher, he shall be paid in accordance with the regularly adopted salary schedule for all teachers of the Parish, and the resident or regular appointed teacher will be paid the difference, if there be any, between his salary and that of the substitute.” (The $4.00 per day provision was increased to $10 per day in October of 1958.)
It is plaintiff’s contention that this resolution as amended fixes the salary of his “day by day” substitute teacher at $10 per day, which for the school year of 180 days would amount to $1800 and that this is the amount which should be deducted from his salary of $7,972.44, leaving the sum of $6,172.44 as the total salary due plaintiff during his sabbatical leave.
On the other hand, defendant contends the language of the resolution is clear to the effect that substitute teachers receive $10 per day for the first 10 days only and thereafter are paid in accordance with the regularly adopted salary schedule for all teachers of the parish, which means that after the first 10 days the substitute receives •Idsoth per day of the regularly scheduled annual salary for teachers with the same job and qualifications as the substitute. Since, in this instance, the regularly scheduled salary for the substitute was the same as that which plaintiff would have received, defendant contends the only amount to which plaintiff is actually entitled is the difference between $10 per day and plaintiff’s daily rate of pay for the first 10 days. However, the defendant school board has voluntarily paid to plaintiff the sum of $1700, as if plaintiff had chosen to be paid according to the first option in LSA-R.S. 17:1184. (The minimum salary allowed a beginning teacher holding a bachelor’s degree is $3400 per year of which 50% is $1700.)
Plaintiff argues first that the interpretation given by the school board is contrary to the intention of the legislature when it passed Act 585 of 1960 amending the second option in LSA-R.S. 17:1184. This amendment adds the proviso (quoted above) that if the school board has a fixed rate of pay for substitutes, the salary of the teacher on leave shall be computed according to such previously fixed rate and not according to the amount actually paid the substitute. Plaintiff contends the purpose of the 1960 amendment was to encourage sabbatical leaves for teachers to further their education, etc. by assuring them a greater income under the “second option” than under the first. Plaintiff argues that if such an interpretation is not given the state statute it has no purpose because a teacher will never choose the second option.
We are unable to agree with counsel for the plaintiff. It must be remembered that the 1960 amendment was not adopted with the particular resolution of the Natchitoches Parish School Board in mind. Other school boards may have no resolution or may have entirely different resolutions as to the salary of substitutes. Some school board resolutions may give the teachers on sabbatical leave an advantage under the first option of LSA-R.S. 17:1184 and other resolutions may give an advantage under the second. As able counsel for defendant has pointed out, if the legislative intent of the 1960 amendment was to give more pay in every case to teachers choosing the second option, then why does the statute retain two options. Clearly, the legislature recognized that sometimes the first option would give the teacher more than the second, depending upon the particular school board involved.
Plaintiff argues further that under the school board’s interpretation a teacher will never choose the second option because he will never be certain how much salary he *306 will receive while on leave. We agree that under this particular school board resolution the exact amount of the substitute’s pay, after the first ten days, depends on the qualifications of the substitute and this is something the teacher taking leave cannot predict with certainty. But, the resolution itself is clear and it was simply up to plaintiff to make a choice under the existing resolution. He could choose option number one and be assured of $1700 a year or he could take option number two and take his chances that the pay of the substitute would be such as to net plaintiff more than $1700. The resolution says the teacher on leave will receive the difference in pay “if there be any, between his salary and that of the substitute” which clearly warned plaintiff that the substitute might receive the same pay.
One obvious purpose of the 1960 amendment, other than that urged by plaintiff, was to prevent a school board from raising the substitute’s rate of pay after the regular teacher had gone on leave, thereby decreasing the salary of the teacher on leave. Under the 1960 amendment it is provided that when a school board has a fixed rate of pay for substitutes, this will be controlling in determining the salary of the teacher on sabbatical leave, regardless of any subsequent changes in pay of the substitute. Thus, such discriminatory practices by school boards are prevented by the 1960 amendment.
Plaintiff argues next that under the language of the resolution of the defendant school board, as quoted above, there are two categories of substitutes. In the first category are “day by day substitutes” who are paid $10 per day. But, after such substitutes have served for 10 days, they become members of another category who are not paid on a “day by day” basis but instead are paid on some other basis according to the regular salary schedule. Under this argument, plaintiff contends the “day by day substitute” receiving $10 per day is the only category named or contemplated by LSA-R.S. 17:1184 and therefore this is the only fixed rate of pay for substitutes which can be used in computing plaintiff’s salary while on leave.
We find no merit in this strained interpretation. Neither the state statute nor the school board resolution make any distinction between “day by day” substitutes and some other kind of substitutes. There is only one class of substitute teachers. It is clearly intended that they be paid on a day by day basis. Under this particular school board resolution the substitute receives $10 a day for the first 10 days and thereafter he is paid at the rate of Msoth per day (the normal school year is 180 days) of the annual salary provided by the regularly adopted salary schedule for teachers of his position and qualifications. The resolution does not state that after the first 10 days the substitute teacher will be paid by the week or by the month or by the year, but instead states that after the first 10 days he will be paid “in accordance with the regularly adopted salary schedule.” The school board has not made a distinction between day by day substitutes and some other kind, but it has provided one substitute salary schedule and it must be taken as a whole and applied.
It must be remembered that this resolution was intended to cover not only substitutes for teachers on sabbatical leave, which is usually for a considerable time, but also for teachers on sick leave or any other kind of leave. If a teacher is on sick leave, it is impossible to anticipate when he will return. Thus it would be illogical to pay his substitute on other than a day by day basis.
Finally, we think it most persuasive that if the legislature, or this school board, had intended there be different kinds of substitutes, they could have very easily so provided. Certainly it cannot be argued that after the first 10 days this substitute became a probationary or tenured teacher. Then what did he become? The answer has to be that he remained a day by day *307 substitute. There is no other category provided in which he can fall.
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.